IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARREN L.,[1]                                    3:17-cv-00946-BR

        Plaintiff,                               OPINION AND ORDER

v.

Commissioner, Social
Security Administration,

        Defendant.

**BRUCE W. BREWER**
P.O. Box 421
West Linn, OR 97068
(503) 621-6633

        Attorney for Plaintiff

---

        [1] In the interest of privacy and pursuant to the
recommendation of the Judicial Conference of the United States,
this Opinion and Order uses only the first name and the initial
of the last name of the nongovernmental parties.  The same
designation will be used to identify nongovernmental family
members named in this case.

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1021

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**JORDAN D. GODDARD**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2733

        Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Darren Lamear seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Plaintiff also filed a Motion (#17) for Remand seeking an order remanding this matter under sentence six, 42 U.S.C. § 405(g), for additional proceedings. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Remand, **AFFIRMS** the decision of the Commissioner, and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on August 5, 2013, alleging a disability onset date of January 1, 2011. Tr. 198.[1] The application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on March 10, 2016. Tr. 39-81. At the hearing Plaintiff amended his disability onset date to March 21, 2012. Tr. 36. Plaintiff was represented at the hearing. Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on March 25, 2016, in which he found Plaintiff was not disabled before his September 30, 2014, date last insured and, therefore, is not entitled to benefits. Tr. 27-39. Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on April 12, 2017, when the Appeals Council denied Plaintiff's request for review. Tr. 8-13. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on November 9, 1964, and was 51 years old at the time of the hearing. Tr. 198. Plaintiff completed high school and two years of college. Tr. 46. Plaintiff has past relevant work experience as a customer-service representative, cashier, and stockbroker. Tr. 65.

---

[1] Citations to the official transcript of record filed by the Commissioner on November 15, 2017, are referred to as "Tr."

Plaintiff alleges disability during the relevant period due to "[f]ragmented disc, separated disc, bulging disc, [and] neuropathy." Tr. 104.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 30-32.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42

U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must

assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set

forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity from his March 21, 2012, alleged onset date through his September 30, 2014, date last insured. Tr. 28.

At Step Two the ALJ found Plaintiff had the severe impairments of degenerative disc disease and neuropathy. Tr. 28.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments during the relevant period did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 28. Specifically, Plaintiff's degenerative disc disease "did not meet the criteria of section 1.04." Tr. 29. The ALJ found during the relevant period that Plaintiff had the RFC to perform less than a full range of light work. The ALJ also found Plaintiff could sit, stand, and walk for six "hours each in an 8-hour workday"; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and lift and carry 20 pounds; could frequently lift and carry 10 pounds; and could never climb ladders, ropes, or scaffolds. Tr. 29. The ALJ stated Plaintiff "needed to avoid

concentrated exposure to hazards such as unprotected heights and moving mechanical parts . . . [as well as] to extreme cold and extreme heat." Tr. 29.

At Step Four the ALJ found during the relevant period that Plaintiff could perform his past relevant work as a stockbroker. Tr. 32. Accordingly, the ALJ concluded Plaintiff was not disabled from March 21, 2012, through September 30, 2014.

## PLAINTIFF'S MOTION (#17) FOR REMAND

### I. *Lamear I* Background

Plaintiff filed an application for DIB on May 18, 2010, alleging a disability onset date of April 16, 2008. The application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on March 6, 2012.

The ALJ issued a decision on March 20, 2012, in which he found Plaintiff was not disabled and, therefore, was not entitled to benefits. Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on May 29, 2013, when the Appeals Council denied Plaintiff's request for review.

On July 31, 2013, Plaintiff filed a complaint in the United States District Court for the District of Oregon (No. 13-cv-01319-AC *Lamear I*) challenging the Commissioner's decision.

As noted, on August 5, 2013, Plaintiff filed a subsequent claim for DIB benefits, and it is this subsequent claim that

Plaintiff now brings before this Court for review (*Lamear II*). Tr. 198.

On September 15, 2014, Magistrate Judge John V. Acosta issued Findings and Recommendation in *Lamear I* in which he recommended the Court affirm the Commissioner's decision to deny Plaintiff's application for DIB benefits and dismiss the matter. Judge Marco A. Hernandez adopted the Findings and Recommendation on December 1, 2014.

On January 28, 2014, Plaintiff appealed to the Ninth Circuit Court of Appeals Judge Hernandez's December 1, 2014, decision to affirm and to dismiss the matter. On August 1, 2017, the Ninth Circuit reversed the December 1, 2014, Order and remanded the matter to the Commissioner for further proceedings "so the ALJ can ask the VE to reconcile [the jobs of office helper, mail clerk, or parking attendant] with Lamear's left hand limitations." 865 F.3d 1201, 1206 (9th Cir. 2017). *Lamear I* is currently pending before the Commissioner.

In his Motion for Remand Plaintiff now asserts this Court should enter an order in *Lamear II* vacating the ALJ's March 25, 2016, decision and remanding *Lamear II* for a hearing before the ALJ "so that [*Lamear II*] can be consolidated" with *Lamear I*. Defendant, however, opposes remand on the grounds that (1) Plaintiff has not presented new evidence to the Court requiring remand and (2) this matter is not ripe for remand.

## II. Analysis

Plaintiff moves to remand this matter pursuant to sentence six, 42 U.S.C. § 405(g), so that this matter may be consolidated with *Lamear I*. As noted, Defendant objects to remand.

### A. Plaintiff has not satisfied the criteria for a remand pursuant to sentence six.

Sentence six, 42 U.S.C. § 405(g), provides:

> The court may . . . remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

"New evidence is material when it 'bear[s] directly and substantially on the matter in dispute,' and if there is a 'reasonabl[e] possibility that the new evidence would have changed the outcome of the . . . determination.'" *Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010)(quoting *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001).

Plaintiff asserts the Ninth Circuit's decision in *Lamear I* constitutes new material evidence that provides this Court with the authority to remand *Lamear II* to the Commissioner. As Defendant points out, however, a decision by the Ninth Circuit to remand a different application involving alleged disability for a different period is legal precedent rather than evidence. *See, e.g., Peterson v. Flagstar Bank FSB*, No.: PWG- 16-2617,

No. 15- 27068, 2017 WL 1020821, at *3 (D. Md. Mar. 15, 2017)("[A]

legal opinion is law, not evidence."). In addition, although the

Ninth Circuit has held a final decision by the Commissioner on a

different application for benefits can constitute new evidence

under certain circumstances, courts have not extended that

principle to pending applications for benefits on which the

Commissioner has not yet reached a final decision. *See Luna v.

Astrue*, 623 F.3d at 1034. In fact, the Ninth Circuit has upheld

the district court's denial of remand for further proceedings

when the second application involved different medical evidence

and a different period. *See Bruton v. Massanari*, 268 F.3d 824,

827 (9th Cir. 2001).

**B.   Plaintiff will have an avenue for review of this
      Court's decision at the administrative level.**

Plaintiff contends remand is necessary because "[i]f

the hearing that results from the remand [in *Lamear I*] results

favorably for Plaintiff, the only proper way for the cessation of

benefits to occur would be through the continuing disability

review process set forth by 20 C.F.R. § 404.1594." Pl.'s Mot.

for Remand at 3. As Defendant notes, however, Plaintiff's

argument is based on a hypothetical situation that may or may not

occur on remand of *Lamear I*, and such speculation is insufficient

to merit remand. In addition, Defendant points out that if the

ALJ decides on remand of *Lamear I* that Plaintiff should be

awarded ongoing disability benefits in addition to benefits for

12 - OPINION AND ORDER

the closed period at issue in *Lamear I*, the regulations permit the ALJ to reopen and to revise the decision before this Court in *Lamear II* after this Court has entered a Judgment. *See* 20 C.F.R. §§ 404.987, 404.988, 404.989. In addition, pursuant to 20 C.F.R. §§ 404.987, 404.988, and 404.989 the Commissioner can exercise jurisdiction over *Lamear II* only after this Court issues a Judgment and cannot "reopen" *Lamear II* while it is pending before this Court.

On this record the Court concludes Plaintiff has not satisfied the criteria for a remand pursuant to sentence six, asserts 42 U.S.C. § 405(g). Accordingly, the Court **DENIES** Plaintiff's Motion for Remand.

### REVIEW OF THE COMMISSIONER'S DECISION IN *LAMEAR II*

Plaintiff contends the ALJ erred when he (1) found at Step Three that Plaintiff's spinal impairments did not meet or equal the criteria of Listing 1.04 and (2) gave "less weight" to the the opinion of opinion of Ruth Sanders, treating Nurse Practitioner (NP), adopted by Amy Asher, M.D., treating physician.

**I.    The ALJ did not err when he found at Step Three that Plaintiff's spinal impairments did not meet or equal the criteria of Listing 1.04.**

As noted, Plaintiff contends the ALJ erred when he found at Step Three that Plaintiff's spinal impairments did not meet or

13 - OPINION AND ORDER

equal the criteria of Listing 1.04A.

To satisfy the criteria of Listing 1.04A a claimant must establish he has "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" together with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A.

The ALJ found Plaintiff "did not exhibit motor loss with sensory or reflex disturbances" during the relevant period and "[n]o physician has opined [Plaintiff's] impairments are medically equal to a listed impairment." Tr. 29. The ALJ noted Kim Webster, M.D., conducted a consultative examination of Plaintiff on March 27, 2014. Dr. Webster noted Plaintiff reported low-back pain "with asymmetry in the calves," which Dr. Webster believed "suggest[ed] . . . the disc fragment in the lumbar spine that may be impinging a nerve root on the left side actually has done so." Tr. 464. Dr. Webster, however, cautioned: "Based on [Plaintiff's] exaggeration of symptoms and poor effort, it is difficult to say whether he actually has any

current problem in the lumbar spine." Tr. 464. Dr. Webster
noted Plaintiff had "[g]ood bulk, normal tone . . . [and] 5/5
strength in the upper and lower extremities despite poor effort
in a variety of areas" and that her "impression was that
[Plaintiff] had 5/5 strength and was using very poor effort."
Tr. 463. Dr. Webster concluded there was not any "objective
evidence to limit standing, walking or sitting" or "substantial
objective evidence to limit lifting or carrying." Tr. 464.
Nevertheless, Dr. Webster noted it "would be reasonable and
prudent to limit lifting and carrying to 20 pounds occasionally
and 10 pounds frequently" because Plaintiff "has had a disc
fragment that was present on the left side of the lumbar spine
with possible to probable nerve root irritation." Tr. 464.

Nevertheless, Plaintiff asserts his treatment records
reflect his muscle weakness notwithstanding Dr. Webster's
findings. Plaintiff, however, relies in part on medical records
that are outside of the relevant period of March 21, 2012,
through September 30, 2014. For example, Plaintiff cites a note
from treating physician Suzanne Gwilliam, M.D., in which she
states Plaintiff reported numbness and tingling in his hands and
which she opined "could be related to [Plaintiff's] back pain,
but I suspect not." Tr. 363. Dr. Gilliam's note, however, is
from September 2008, which is nearly four years before
Plaintiff's alleged onset date. Plaintiff also relies on

treatment notes from March 2009 and August 2010, which predate
Plaintiff's onset date by 18-36 months.

In addition, Plaintiff relies on a a March 27, 2013,
treatment note by treating physician Thomas Starbard, D.O., in
which he reported Plaintiff had muscle strength in the left
ankle dorsiflexion and hip flexion of 4/5 but "5/5 otherwise."
Tr. 402.  Plaintiff, however, saw Dr. Starbard on March 27, 2013,
after Plaintiff was involved in a motor-vehicle accident on
March 26, 2013, which exacerbated Plaintiff's symptoms.  Tr. 401.
Plaintiff reported to Dr. Starbard that before the accident
Plaintiff "joined a community center . . . and was working out at
there [sic] gym and swimming and was feeling some overall
improvement in his chronic pain."  Tr. 401.  At subsequent
treatment sessions, however, Plaintiff showed improvement, and by
July 2013 Dr. Starbard reported Plaintiff's "injuries related to
the motor vehicle accident have been resolved."  Tr. 419.

Plaintiff also relies on an October 13, 2014, treatment note
from Amy Asher, M.D., treating physician, in which she reported
Plaintiff had 3/5 muscle strength "diffusely of the left" lower
extremity, 5/5 on the right."  Tr. 473.  This treatment note,
however, is outside of the relevant period.  In addition,
Plaintiff saw Dr. Asher on October 13, 2014, after Plaintiff
suffered injury and exacerbation of his symptoms two days earlier
when he was "at the bar and two guys were wrestling and knocked

in to him which pushed him into the bar." Tr. 472. Moreover, Plaintiff's weakness did not last for twelve months. In July 2015 Jesse Lui, M.D., examining neurosurgeon, noted Plaintiff did not have any lower extremity weakness. Tr. 502.

On this record the Court concludes Plaintiff has not established the ALJ erred when he found Plaintiff did not meet the criteria for Listing 1.04A because the record does not reflect Plaintiff suffered the required motor loss during the relevant period.

Plaintiff also asserts the ALJ erred when he did not adequately discuss whether Plaintiff equaled the Listing 1.04A. The record, however, reflects Plaintiff did not present a theory of equivalence to the ALJ and did not establish equivalence before the ALJ. In addition, the record supports the ALJ's finding that "[n]o physician has opined [Plaintiff's] impairments are medically equal to a listed impairment." Tr. 29.

Accordingly, on this record the Court concludes the ALJ did not err when he found at Step Three that Plaintiff's spinal impairments did not meet or equal the criteria of Listing 1.04A during the relevant period.

**II. The ALJ did not err when he gave "less weight" to NP Saunders's opinion adopted by Dr. Asher.**

Plaintiff asserts the ALJ erred when he gave less weight to the February 2016 opinion of NP Saunders, which was adopted by Dr. Asher.

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians. 20 C.F.R. § 416.902. An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners. SSR 06-03p, at *2. Factors the ALJ should consider when determining the weight to give an opinion from these sources include the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant and the consistency of the source's opinion with other evidence in the record. SSR 06-03p, at *4. On the basis of the particular facts and the above factors, the ALJ may assign a not-acceptable medical source either greater or lesser weight than that of an

acceptable medical source.  SSR 06-03p, at *5-6.  The ALJ,
however, must explain the weight assigned to such sources to the
extent that a claimant or subsequent reviewer may follow the
ALJ's reasoning.  SSR 06-03p, at *6.

On February 8, 2016, NP Saunders completed a Physical
Residual Functional Capacity Assessment Form in which she opined
Plaintiff could occasionally lift and carry 10 pounds and
frequently lift and carry less than 10 pounds; could stand and/or
walk for less than two hours in an eight-hour work day; could sit
for less than six hours in an eight-hour work day; required a
cane for ambulation; was limited in his ability to push and/or
pull in his upper and lower extremities; could occasionally
climb; could never balance, stoop, kneel, crouch, or crawl; and
could "less than occasionally" reach in all directions, handle,
finger, and feel.  Tr. 497-98.  NP Saunders noted she was "unable
to determine" the number of absences per month that Plaintiff
might experience if he returned to full-time work.  Tr. 499.
Finally, NP Saunders confirmed she "believ[ed] [Plaintiff's]
residual capacities [set out in the evaluation] were in effect"
at the time of Plaintiff's March 21, 2012, onset date.  Tr. 499.

On February 10, 2016, Dr. Asher "agree[d] with [the
limitations set out by NP Saunders]."  Tr. 494.

The ALJ gave the Sanders/Asher opinion less weight on the
grounds that NP Saunders and Dr. Asher did not treat or examine

Plaintiff during the relevant period; the opinion of Plaintiff's limitations was contradicted by Dr. Webster; and their opinion was inconsistent with Plaintiff's activities of daily living, which included travel, extensive walking, gardening, and performing household chores. The record reflects Dr. Asher did not begin treating Plaintiff until October 2014, at which point Plaintiff was seen by her because he had been injured in the bar fight and exacerbated his symptoms. NP Saunders did not begin treating Plaintiff until August 2015, which was almost a year after the end of the closed period. Plaintiff, nevertheless, asserts Dr. Asher and NP Saunders's lack of familiarity with Plaintiff during the relevant period is not a legitimate reason to discount their opinion because NP Saunders referenced Plaintiff's MRIs from 2010 and 2014 in her opinion. The 2014 MRI, however, was performed in December 2014, which is two months after the end of the closed period, and the findings were essentially unchanged from those in Plaintiff's 2010 MRI. Dr. Webster specifically noted her review of Plaintiff's 2010 MRI in her consultative examination of Plaintiff and, nevertheless, concluded "there is no consistent objective evidence to limit standing, walking or sitting." Tr. 464.

In addition, Dr. Webster conducted her examination of Plaintiff during the relevant period and reached her opinion that there was not any "objective evidence to limit standing, walking

or sitting" or "substantial objective evidence to limit lifting or carrying."  Tr. 464.

Finally, the ALJ noted the Saunders/Asher opinion was inconsistent with Plaintiff's reported activities during the relevant period.  For example, Dr. Asher and NP Saunders opined Plaintiff's cane was medically necessary for ambulation and had been since 2012, but in January 2014 Plaintiff went to Hawaii for seven days and reported he was able to walk fairly well without his cane even on the beach.  Tr. 393.  Similarly, Dr. Asher and NP Saunders opined during the relevant period that Plaintiff was unable to stand or to walk for two hours in an eight-hour work day, but in June 2013 Plaintiff reported walking around the zoo "for several hours" and it did not exacerbate his back or neck complaints.  Tr. 414.  Even after the relevant period in August 2015, Plaintiff reported he had "been doing a lot of walking . . . and has been very active."  Tr. 506.  Plaintiff also reported in July 2013 that he had been doing gardening and "tolerating it fairly well," but NP Saunders and Dr. Asher opined Plaintiff could never perform activities such as stooping, kneeling, crouching, or crawling and was limited to less than occasional use of his hands.  Tr. 496.

On this record the Court concludes the ALJ did not err when he gave less weight to the opinion of NP Saunders and Dr. Asher because the ALJ provided specific and legitimate reasons for

doing so based on substantial evidence in the record.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this $8^n$ day of August, 2018.


_____
ANNA J. BROWN
United States Senior District Judge